HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| INGENCO HOLDINGS, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ACE AMERICAN INSURANCE COMPANY, <br><br> Defendant. | CASE NO. C13-543RAJ <br><br> ORDER |

## I. INTRODUCTION

This matter comes before the court on Plaintiffs' motion to compel discovery. For the reasons stated below, the court neither grants nor denies the motion to compel, but instead directs the parties to comply with the instructions concluding Part III as to the disputes that the motion raises. The clerk shall TERMINATE the motion to compel. Dkt. # 42.

This order has been hastily revised so that it does not address Defendant's motion to continue the deadline for expert witness disclosures. Dkt. # 47. Just this morning, after the motion had already been pending for two weeks, the parties withdrew it after reaching an agreement. The court will accept the parties' compromise, but warns them that it will consider sanctions if they take the same approach in a future motion. The court has too many motions in too many civil cases to use its limited resources addressing disputes that the parties belatedly resolve.

ORDER – 1

## II.  BACKGROUND

Plaintiff Ingenco Holdings, LLC is the parent company of Plaintiff Bio Energy (Washington), LLC.  Ingenco (who the court will treat as the sole Plaintiff for the sake of simplicity) is the insured on a commercial property insurance policy from Defendant ACE American Insurance Company.  In addition to more than a dozen other properties that Ingenco or its subsidiaries operate in Virginia, Maryland, Pennsylvania, and North Carolina, the policy covers a landfill gas processing facility that Bio Energy operates in western Washington.  Ingenco has sued ACE for breach of the policy, bad faith, as well as violations of the Washington Consumer Protection Act and its Insurance Fair Conduct Act, all arising from ACE's refusal to indemnify Ingenco for losses resulting from the failure of a methane purification apparatus at the landfill facility.  The court suggests no opinion on the merits of the parties' insurance dispute, because the court has never considered them.

The motion before the court concerns discovery, not the merits of this dispute.  Ingenco seeks either to compel the production of ACE's entire claim file or to compel the court to agree to an in camera review of the portion of the claim file that ACE has withheld.  The latter would be an unenviable chore for the court, because according to ACE's most recent version of its privilege log, it has withheld (by the court's conservative estimate) more than 800 pages of documents.  ACE justified withholding most of the documents by asserting that they are privileged communications between ACE (or its agents) and the attorney ACE hired shortly after Ingenco filed the claim at issue in this dispute.

## III.  ANALYSIS

### A.   The Parties Do Not Address the Law Relevant to the Attorney-Client Privilege Dispute at the Core of Their Motion to Compel.

What state's attorney-client privilege law applies when a client located in Pennsylvania communicates, either directly or via an agent located in New York or New Jersey, or via an agent of that agent located in British Columbia, with an attorney in

ORDER – 2

1  Illinois?  Ingenco would have the court apply Washington law; ACE would have the
2  court apply Virginia law.  Both answers seem an affront to intuition.  The attorney-client
3  privilege is, after all, a privilege protecting a client's communications with her attorney.
4  If none of the communications took place in Washington or Virginia, why would either
5  state's privilege law apply?

6  The parties' attempts to answer these questions begin in the right place by noting
7  that in a diversity case like this one, the court applies the choice-of-law rules of the forum
8  state.  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).  The threshold question in a
9  Washington choice-of-law analysis is whether there is an actual conflict with another
10 state's law.  *Burnside v. Simpson Paper Co.*, 864 P.2d 937, 942 (Wash. 1994) ("[T]he
11 party seeking to apply foreign law must show that an actual conflict exists between the
12 presumptive Washington law and the law of the foreign state.").  ACE asserts that
13 Virginia law ought to apply, and that Virginia law conflicts with Washington law as to
14 the attorney-client privilege question that Ingenco's motion raises.  The court will not
15 consider whether Virginia and Washington law conflict in this respect (Ingenco asserts
16 that they do not), because the court is certain that whichever state's law applies to the
17 attorney client privilege issue in this case, it is not Virginia's law.

18 ACE arrived at its choice of Virginia law by invoking a choice-of-law analysis
19 relevant to disputes over insurance coverage.  In that context, the choice of Virginia law
20 is at least defensible, because the coverage dispute involves a Virginia insured (Ingenco)
21 and a policy negotiated and delivered in Virginia covering many properties located in
22 Virginia in addition to the Washington property at issue in this case.  The court suggests
23 no opinion on ACE's contention that Virginia law rather than Washington law ought to
24 apply to the parties' coverage dispute, because there is no coverage dispute before the
25 court.

26 Instead of a coverage dispute, Ingenco's motion raises a dispute about the
27 application of attorney-client privilege. Washington courts apply Section 139 of the
28 ORDER – 3

Restatement (Second) of Conflict of Laws to decide choice-of-law questions as to whether a privilege protects a communication. *State v. Donahue*, 18 P.3d 608, 611 (Wash. Ct. App. 2001). Section 139, which neither Ingenco nor ACE cited, provides as follows:

> (1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.
>
> (2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect.

*Id.* To the extent Washington courts apply the communicative privilege law of a state other than Washington, they apply the law of the state with the "most significant relationship" with a communication. So far as the record reveals, Virginia has no relationship at all with the attorney-client communications at issue in this case.

Because the parties did not cite § 139 of the Restatement, they did not provide evidence squarely addressing the locales in which ACE's attorney-client communications occurred. From the evidence the parties have submitted, along with the allegations of Ingenco's complaint, it appears to the court that ACE (which is headquartered in Pennsylvania) hired an attorney from an Illinois law firm shortly after Ingenco filed its insurance claim. From Illinois, Ingenco's attorney communicated mostly with representatives of Starr, the agency (or group of agencies) who adjusted Ingenco's claim on ACE's behalf. Starr's representatives were located in either New York or New Jersey. Relatively early on, Starr hired Charles Taylor Adjusting, a firm located in British Columbia, Canada, to conduct investigation of the claim. No one should mistake this paragraph as expressing the court's findings of fact; it is merely the court's best guess as

ORDER – 4

to which states might arguably have a significant relationship with the attorney-client communications at issue. Neither Washington nor Virginia are among them.

ACE's 18-page privilege log claims attorney-client privilege as to all or part of dozens (perhaps hundreds) of documents containing communications between its Illinois attorney and representatives of Starr or Charles Taylor. The court knows almost nothing about the content of those documents because the privilege log is almost silent as to their content. The privilege log reveals only the number of pages in the document, the date of the document, who sent and received the document, and a notation indicating whether the document is an email, letter, or some other category of document.

Ingenco's motion invokes *Cedell v. Farmers Ins. Co.*, 295 P.3d 239 (Wash. 2013), to either compel production of every document in ACE's claim file for which it invoked the attorney-client privilege or work product doctrine, or to compel the court to review those documents in camera to determine which are discoverable. In *Cedell*, the Washington Supreme Court held that in a first-party bad faith lawsuit, attorney-client privilege is presumptively unavailable as a basis for an insurer to withhold evidence of communications with its attorney during the claims adjusting process. *Id.* at 246. An insurer can overcome this "presumption of discoverability" if it shows that "its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability . . . ." *Id.* Even if it succeeds in overcoming the presumption, however, the insurer must submit any evidence it hopes to withhold to the court, which must conduct an in camera review to determine which portions can be withheld or redacted. *Id.*

Because the court will not apply *Cedell* today, and may never apply it in this case, it will not consider its holdings in detail. It observes, however, that every federal court to consider the issue has held that the in camera review mandate of *Cedell* does not apply in federal court. *See*, *e.g.*, *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-611JLR, 2014 U.S. Dist. LEXIS 78883, at *18-23 (W.D. Wash. May 27, 2014); *Indus. Sys. &*

ORDER – 5

*Fabrication, Inc. v. W. Nat'l Assur. Co.*, No. 2:14-cv-46-RMP, 2014 U.S. Dist. LEXIS 154021, at *4 (E.D. Wash. Oct. 30, 2014).  Instead, a federal court exercises discretion in deciding whether in camera review is appropriate.  *MKB Constructors*, 2014 U.S. Dist. LEXIS 78883 at *19-20; *Indus. Sys.*, 2014 U.S. Dist. LEXIS 154021, at *4.  It is difficult to conceive of a circumstance in which the court would exercise its discretion to conduct an in camera review of more than 800 pages of documents.

For purposes of the dispute now before the court, the court need only conclude that it is aware of no state other than Washington that has declared the attorney-client privilege presumptively inapplicable in a bad faith claim from a first-party insured. Whatever state has the "most significant relationship" with the attorney-client communications at issue, its privilege law is likely to conflict with Washington's.  Where neither party has addressed the choice-of-law analysis relevant to the privilege question, the court declines to decide whether *Cedell* will apply in this case.  Moreover, as the court will discuss in Section III.C, ACE's privilege log gives neither Ingenco nor the court a basis to evaluate its assertions of privilege, regardless of which state's (or states') law applies to those assertions.

To the extent the court is inclined to review portions of the claim file in camera, ACE asks the court to bifurcate this case so that the resolution of Ingenco's bad faith and statutory claims would follow the resolution of Ingenco's breach-of-policy claim. Because the court is not ordering in camera review at this time, it need not address this request.  If ACE wishes to renew a request for bifurcation, it must first consider this court's past rulings on bifurcation requests from insurers.  *E.g.*, *Tavakoli v. Allstate Prop. & Cas. Ins. Co.*, No. C11-1587RAJ, 2012 U.S. Dist. LEXIS 181322, at *31-32 (W.D. Wash. Dec. 21, 2012); *Freeman v. State Farm Mut. Auto. Ins. Co.*, No. C11-761RAJ, 2012 U.S. Dist. LEXIS 109261, at *2-5 (W.D. Wash. Aug. 3, 2012).  It must then meet and confer with Ingenco over a specific bifurcation proposal.  If the parties are unable to agree, ACE may make its request for bifurcation in a proper motion.

ORDER – 6

## B. The Parties Do Not Address The Law Relevant to Their Dispute Over the Application of the Work Product Doctrine.

ACE's privilege log also invokes the work product doctrine as a basis for withholding some documents. The court can only guess how many. The privilege log identifies fewer than a dozen documents that ACE withheld solely as work product. It identifies dozens of documents that ACE withheld or redacted with the designation "WP/AC." Perhaps ACE used that designation to invoke both the work product doctrine and the attorney-client privilege; perhaps it used that designation to indicate that one or the other applies, but not necessarily both. Fortunately, the court need not guess, because as it will discuss in the next section, it will resolve the parties' disputes over work product, if at all, only after ACE substantially revises its privilege log.

For now, the court notes that Ingenco's invocation of *Cedell* to compel either the production or in camera review of ACE's alleged work product is misplaced. Whatever *Cedell* holds as to the presumptive inapplicability of the work product doctrine,[1] those holdings are not binding in federal court. Whereas a federal court looks to state law governing attorney-client privilege "regarding a claim or defense for which state law supplies the rule of decision," Fed. R. Evid. 501, every court to consider the issue has held that Federal Rule of Civil Procedure 26(b)(3) invariably governs assertion of work product protection in federal court. *E.g.*, *Frontier Refining, Inc. v. Gorman-Rupp, Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998); *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1989); *MKB Constructors*, 2014 U.S. Dist. LEXIS at *24-25; *Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009). To the extent that Ingenco wishes to overcome ACE's invocation of the work product doctrine, it cannot do so solely by relying on *Cedell*.

---

[1] The Supreme Court in *Cedell* "start[ed] from the presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant." 295 P.3d at 246.

ORDER – 7

**C.   ACE's Privilege Log is Inadequate.**

Regardless of the law that will apply to ACE's assertion of the attorney-client privilege and work product protection, ACE's privilege log is not adequate. Federal Rule of Civil Procedure 26(b)(5) mandates that a party asserting privilege or work product protection as a basis to withhold otherwise discoverable information must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." ACE's privilege log, which contains virtually no information about the "nature of the documents" it withheld, provides very little information that would allow Ingenco or the court to assess ACE's privilege assertions.

Some of the information that would bolster ACE's privilege log came in conjunction with its opposition to the motion to compel. There, a representative of Starr provided information about how it adjusted Ingenco's claim, including the role of its Pennsylvania attorney. The attorney (who is also ACE's counsel of record in this case) provided a declaration describing, in broad terms, his role in assisting ACE. That evidence can be incorporated as a preamble to the privilege log. Still, ACE will need to provide more information about its assertion of privilege and work product protection as to each document it has withheld. It must also either cease using the ambiguous designation "AC/WP," or it must explain precisely what that designation means.

**D.   The Court is In No Position to Assess the Propriety of ACE's Withholding of Evidence of Its Loss Reserves.**

ACE used its privilege log to designate approximately 15 documents as undiscoverable (in whole or in part) because they contain information about the loss reserves it set for Ingenco's claim. It does not claim attorney-client privilege or work product protection for these documents. Absent those assertions, information about its loss reserves is discoverable so long as it is relevant to a claim or defense. Fed. R. Civ. P. 26(b)(1).

ORDER – 8

Unfortunately, rather than demonstrate the relevance (or lack thereof) of evidence of ACE's loss reserves *in this case*, the parties argue about the categorical discoverability of loss reserves. Neither party persuades the court. Loss reserves can be relevant. For example, where an insured asserts that an insurer offered an unreasonably low sum to resolve a claim, evidence of loss reserves may help illuminate that assertion. But in other cases, such as where an insurer denies coverage based solely on its interpretation of its policy, loss reserves likely have no relevance. The court has no idea what relevance loss reserves might have in this case, because neither party has addressed that issue.

**E.    To the Extent a Dispute Remains as to Documents ACE Withheld Because They Were Irrelevant, The Court Cannot Resolve It.**

ACE used its privilege log to identify a few dozen claim file documents from which it redacted material it deemed irrelevant. When Ingenco filed its motion, it had apparently not asked ACE why it deemed portions of those documents irrelevant. That suggests to the court that Ingenco failed in its obligation to meet and confer about this portion of its motion. Knowing nothing about what was in the redacted portions of the documents, Ingenco asserted in its motion that because they were in ACE's claim file, they must be relevant. In opposition, ACE asserted (without supporting evidence) that it redacted portions of documents containing information about insureds other than Ingenco. Ingenco did not mention these documents in its reply brief. Perhaps the parties have resolved their dispute about these documents. If not, they have not put the court in a position to resolve the dispute.

**F.    The Parties Must Take The Following Steps to Resolve Disputes Over ACE's Claim File.**

The court issues the following rulings as to ACE's claim file:

1) ACE shall either produce every document in the claim file, or it shall produce a revised privilege log in accordance with this order no later than December 23, 2014.

ORDER – 9

2) The parties shall meet and confer to discuss any disputes over the revised privilege log no later than January 9, 2015.  Among other things, they shall attempt to reach agreement as to which state's (or states') law applies to ACE's assertions of attorney-client privilege.

3) If Ingenco wishes to seek relief from the court as to issues arising from the claim file, it shall work with ACE to prepare a joint motion in accordance with Local Rules W.D. Wash. LCR 37(a)(2).  That motion shall be filed no later than January 30.

## IV.  CONCLUSION

For the reasons stated above, the clerk shall TERMINATE Ingenco's motion to compel.  Dkt. # 42.  As to the disputes that Ingenco raised in that motion, the parties shall comply with the instructions at the conclusion of Part III.

DATED this 8th day of December, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 10